FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 12, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KELLY ALTIERO and JEREMIAH FREEMAN, husband and wife, and the marital community comprised thereof, DOMINICK ALTIERO, a single person, GABRIEL ALTIERO, a single person, ALEXSIS ALTIERO, a single person, CIARA WELLS, a single person,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>COUNTY OF SPOKANE, SPOKANE COUNTY REGIONAL ANIMAL PROTECTION SERVICES (SCRAPS), ANIMAL PROTECTION OFFICER JONATHAN DURGIN in both his individual and official capacity, FIELD OPERATIONS MANAGER ASHLEY PROSZEK in both her individual and official capacity, SPOKANE COUNTY SHERIFF'S DEPARTMENT DEPUTIES JOHN AND JANE DOES 1-10 in both their official and individual capacities, and SPOKANE COUNTY SHERIFF OZZIE KNEZOVICH,<br><br>　　　　　　　Defendants. | No. 2:22-CV-00211-RLP<br><br>ORDER GRANTING SUMMARY JUDGMENT |

ORDER GRANTING SUMMARY JUDGMENT -- 1

BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No. 51). Oral argument was held on this matter on February 4, 2025. Plaintiffs were represented by attorney Douglas Phelps. Defendants were represented by attorney Christopher Browning. In their Complaint, Plaintiffs allege Defendants violated their rights under federal and state law through activities related to the seizure of various animals from their property and the euthanasia of one of the animals. The Court agrees with Defendants that Plaintiffs have not identified any issues of material fact regarding liability and, as a result, Defendants are entitled to summary judgment as a matter of law.

## BACKGROUND[1]

Officer Jonathan Durbin is an Animal Protection Officer for Spokane County Regional Animal Protection Services ("SCRAPS"). ECF No. 56, ¶ 2. On or about January 28, 2021, Officer Durbin received an online complaint form an individual named Kayleigh Wytcherley,[2] alleging animal mistreatment at a ranch and animal rescue location owned by Kelly Altiero. ECF No. 56, ¶ 5. Officer Durbin followed up on the complaint by contacting Ms. Wytcherley.

---

[1] Given the context of Defendants' motion for summary judgment, the foregoing facts are set forth in the light most favorable to Plaintiffs.

[2] Officer Durbin's declaration inconsistently spells the complainant's last name as "Wytcherley" in some instances and "Wycherley" in others. For consistency, the Court will use "Wytcherley."

ORDER GRANTING SUMMARY
JUDGMENT -- 2

Officer Durbin traveled to Ms. Altiero's property on February 9, 2021. According to his declaration, the purpose of the trip was to "discuss Ms. Wycherley's [sic] allegations" with the residents. ECF No. 56, ¶ 11. Officer Durbin drove a marked vehicle to the property and wore a body camera that captured his activities. ECF No. 56, ¶ 4; 61 (non-scannable exhibit).

The body camera footage depicts Officer Durbin driving along some sort of rural road. According to his declaration, the road was a "long driveway" he accessed off of South Harrison Road. ECF No. 56, ¶ 13. According to Officer Durbin's declaration, he did not encounter any closed gates or obstacles in accessing the property. ECF No. 56, ¶ 14. The video corroborates this claim. In fact, at one point in the video, Officer Durbin can be seen driving through what appears to be an open gate. *See* ECF No. 61 at 3:56-58.[3] According to Kelly Altiero's declaration, Officer Durbin would have had to have driven past "at least one 'No Trespassing' sign" while accessing her property. ECF No. 64-1, Exh. A, ¶ 6. However, no further information is given regarding the location of the sign. There are not any "NoTrespassing" signs depicted in Officer Durbin's video footage.

---

[3] Kelly Altiero has filed a declaration stating the gate was "closed at all times." ECF No. 64-1, Exh. A, ¶ 6. However, she does not dispute the accuracy of Officer Durbin's video or address specific reasons why what may have been generally true of the gate must have also been true on February 9, 2021, despite Officer Durbin's video.

ORDER GRANTING SUMMARY
JUDGMENT -- 3

After approximately five minutes, the video depicts Officer Durbin stopping his vehicle at what appears to be a house. Several dogs approached as he got out of his vehicle. According to his declaration, Officer Durbin observed dried blood on the muzzle of one of the dogs. ECF No. 56, ¶ 19. While outside of his vehicle, Officer Durbin can be heard talking out loud, wondering where to find the residence's front door. Eventually, Officer Durbin approached "what appeared to be the only entry to the residence facing the driveway." ECF No. 56, ¶ 20. While knocking at the door, Officer Durbin looked through a large plate glass window next to the door. The window provided an unobstructed view of the house's interior. Officer Durbin saw several more dogs inside, but did not see any people. After waiting for approximately 15 seconds, Officer Durbin left the door and returned to his vehicle. ECF No. 56, ¶ 21.

Once back in his vehicle, Officer Durbin began driving away from the property. While driving back to the main road, Officer Durbin observed livestock standing in deep mud and feces, as reported by Ms. Wytcherley. ECF No. 56, ¶ 23. He also observed unbroken ice on the water troughs. *Id.* Officer Durbin's observations are depicted on the video footage.

After passing livestock pens, Officer Durbin encountered Dominick Altiero on the driveway. ECF No. 56, ¶ 26. This encounter is not included with the video footage submitted to the Court. According to Officer Durbin, Mr. Altiero did not tell him he was trespassing or ask him to leave. *Id*. After talking with Mr. Altiero, Officer Durbin left the property. *Id*. The Court has not received any statements from Dominick Altiero recounting his recollection of the encounter.

ORDER GRANTING SUMMARY JUDGMENT -- 4

The day after visiting the Altiero property, Officer Durbin obtained a search warrant. The warrant affidavit alleged probable cause to believe the Altieros were operating an unlicensed commercial kennel in violation of Spokane County Code § 5.04.042(9), confining animals in an unsafe manner in violation of RCW 16.52.080, and that they had committed animal cruelty in violation of RCW 16.52.207(2)(a). The warrant authorized officers to search the Altiero property and seize any animals found to be kept in violation of ch. 16.52 of the Revised Code of Washington.

The warrant was executed at 11:25 a.m. the same day. ECF No. 56, ⁋ 33. Officer Durbin participated in executing the warrant, along with SCRAPS Field Operations Manager Ashley Proszek, other SCRAPS animal protection officers, and Spokane County Sheriff's Office deputies. During the search, officers observed livestock kept in what they deemed a violation of RCW 16.52.080 due to lack of access to water, mud/feces in pens, moldy feed, overgrown hooves, and poor body conditions. Officer Durbin and Ms. Prosezek decided to seize the livestock pursuant to the warrant. ECF No. 55, ⁋ 17; 56, ⁋ 42. Officers seized 22 horses, 8 cows, and 4 mules. ECF No. 56, ⁋ 44.

While officers were executing the warrant, Ms. Altiero and others on the property were asked to remain inside the residence. According to Officer Durbin, this lasted approximately 53 minutes. ECF No. 68, ⁋ 4.

Officers executing the warrant lacked sufficient time to seize all animals believed to meet the statutory criteria. ECF No. 56, ⁋ 44. Accordingly, Officer Durbin obtained a second search warrant for the remaining animals on February

ORDER GRANTING SUMMARY JUDGMENT -- 5

11, 2021. The warrant was executed the same day, and the remaining animals were taken into custody. ECF No. 56, ¶ 47.

After completing the seizure, Officer Durbin provided Kelly Altiero with a search warrant return, inventory, receipt, and a disposition letter. ECF No. 56, ¶ 48. The disposition letter stated that "[p]ursuant to RCW § 16.52.085 [the animal owner] has 15 business days from removal of animals in which to take action for the return of the animals." ECF No. 56-13. The letter also stated, "Revised Code of Washington § 16.52.085 contains some very important information for you, the owner, regarding the disposition of the seized animals. I have attached a copy of this code for your review." *Id*.

The seized animals were housed at the Spokane County Fairgrounds. ECF No. 56, ¶ 53. According to Officer Durbin and Ms. Prosezek, the animals "were kept in pens of adequate size, fed properly, and taken outside to exercise daily." ECF No. 56, ¶ 54. *See also* ECF No. 55, ¶¶ 20, 21. The record contains no evidence from the Plaintiffs contradicting this information regarding the animals' care.

On February 12, 2021, SCRAPS issued a Facebook Post, documenting the seizure. The post read as follows:

> SCRAPS Executes Search Warrant for Animal Cruelty – Seizes 40 Horses & Cows
>
> On February 10th and 11th, 2021, Spokane County Regional Animal Protection Service (SCRAPS) continued its investigation into animal cruelty at a property in southwest Spokane County by executing a search-and-seizure warrant. In total, SCRAPS Animal Protection Officers seized 40 live animals: 24 full-size horses, 8 miniature horses, 5 full-size cows, and 3 miniature cows. The living conditions of the animals were deplorable, and their bodies bear the consequences of prolonged neglect. Bodies of deceased

ORDER GRANTING SUMMARY
JUDGMENT -- 6

> equines and bovines, which resident dogs were being allowed to feed on, were found throughout the property.
>
> SCRAPS is investigating the property owners for violations of the Revised Code of Washington and Spokane County Code, including, but not limited to, Animal Cruelty in the First Degree (RCW § 16.52.205), Animal Cruelty in the Second Degree (RCW § 16.52.207), Transporting or Confining Animals in an Unsafe Manner (RCW § 16.52.080), and operating an illegal commercial kennel (SCC § 5.04.042).
>
> SCRAPS extends its deepest gratitude to its skilled and diligent Animal Protection Officers and their community partners, who spent hours on scene, in below freezing temperatures, to safely secure the seized animals and deliver them to safety.
>
> For community members seeking to support this effort, SCRAPS is kindly requesting donations of hay (grass or alfalfa). Interested community members are asked to contact SCRAPS Field Operations Manager, Ashley Proszek, at 509-477-6865.

ECF No. 56-15.

Also on February 12, 2021, Ms. Proszek made a Facebook Post requesting grass and alfalfa for an emergency rescue. The post read as follows:

> Different request – Is there anyone that is able to take a credit card, or willing to bill a business (and therefore have to wait a few weeks to get paid), that has grass and alfalfa they can deliver to the [S]pokane county fairgrounds? Needed today for emergency rescue.

ECF No. 55-4.

On February 23, 2021, the Altieros filed a petition in Spokane County District Court for return of their livestock. ECF No. 55, ¶ 30; 56, ¶ 60.

On February 25, 2021, one of the seized animals—a Belgian draft horse named Melvin—fell ill and could not stand. ECF No. 55, ¶ 22. Melvin received medical attention and volunteer assistance, but after seven hours he was still unable

ORDER GRANTING SUMMARY
JUDGMENT -- 7

to stand. An attending veterinarian recommended administration of humane euthanasia. *Id.* Ms. Proszek consented to euthanasia and Melvin was put down. *Id.* The Altieros were not notified of this development. A forensic report indicated Melvin had a chronic perforating gastric ulcer with abscess and associated sepsis. ECF No. 69, ¶ 30. According to the SCRAPS veterinarian, it was more likely than not Melvin already had a gastric ulcer prior to his seizure. ECF No. 69, ¶ 31.

On February 26, 2021, all animals were returned to the Altieros, with the exception of Melvin. ECF No. 69, ¶ 33.

## ANALYSIS

Summary judgment will be granted if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). In ruling on a motion for summary judgment, the Court views the evidence and inferences therefrom "in the light most favorable to the adverse party". *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008) (quoting *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th Cir. 1977)). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Self-serving, uncorroborated testimony does not create a genuine issue of material fact. *Id.*

The Plaintiffs allege several causes of action based on the foregoing events: (1) violation of the constitutional right against unreasonable search, (2) violation of the constitutional right against unreasonable seizure, (3) deprivation of property in violation of the constitutional right to due process, (4) municipal liability based on

negligent hiring and/or training, (5) defamation, (6) trespass, and (7) negligence. Defendants assert they are entitled to summary judgment all claims. Each is addressed in turn.

*1. Unreasonable Search*

The Fourth Amendment to the United States Constitution protects against unreasonable searches. U.S. Const. Amend. IV. A warrantless search of a home or its immediate curtilage is presumptively unreasonable. *United States v. Lundin*, 817 F.3d 1151, 1158 (9th Cir. 2016). However, a warrant is not required if an officer's actions fall under "the so-called 'knock and talk' exception to the warrant requirement, which permits law enforcement officers to 'encroach upon the curtilage of a home for the purpose of asking questions of the occupants.'" *Id.* (quoting *United States v. Perea-Rey*, 680 F.3d 1179, 1187 (9th Cir. 2012)). In the typical case, the knock and talk exception permits law enforcement to "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Florida v. Jardines*, 569 U.S. 1, 8, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013).

Defendants argue qualified immunity protects them from liability for any search that took place when Officer Durbin knocked on the door of the Altiero property on February 9, 2021. Qualified immunity protects a law enforcement "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 192 S.Ct. 808, 172 L.Ed.2d 565 (2009). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand

ORDER GRANTING SUMMARY JUDGMENT -- 9

that what he is doing' is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018) (citation omitted). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Id*. This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Mallery v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The Court agrees with Defendants that qualified immunity applies. There is no genuine dispute that Officer Durbin traveled through an open gate to access the Altiero property. Once at the residence, Officer Durbin knocked on what appeared to be the front door and waited a short period of time before leaving. Although Officer Durbin made observations during his drive to and from the property and while waiting at the front door, there is no genuine issue of fact indicating he saw anything beyond what was in plain view. *See Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). Qualified immunity protects against liability in this circumstance. *See Carroll v. Carman*, 574 U.S. 13, 18-19, 135 S.Ct. 348, 190 L.Ed.2d 311 (2014).

2. Unreasonable Seizure

The Constitution also protects against unreasonable seizure. U.S. Const. Amend. IV. Plaintiffs argue a violation of this protection because they were unreasonably seized during execution of the search warrant on their property on February 10, 2021. Defendants argue the detention was lawful and that, in any event, qualified immunity protects against liability. The Court agrees with Defendants.

It is well established that a warrant "founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises [in their home] while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Plaintiffs fail to articulate why officers unreasonably curtailed their movements pursuant to this authority. At the very least, qualified immunity protects Defendants from liability for restricting Plaintiffs from leaving their residence during execution of the search warrant.

*3. Deprivation of property in violation of due process*

The Fourteenth Amendment provides the state cannot "deprive any person of … property [ ] without due process of law." U.S. Const. Amend. XIV. A procedural due process claim has two elements. First, the court "asks whether there exists a liberty or property interest which has been interfered with by the State." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013). Second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id*. The defense of qualified immunity applies in this context. And because a procedural due process claim requires a balancing of factors, the law "can rarely be considered clearly established at least in the absence of closely corresponding factual and legal precedent." *Brewster v. Bd. of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 983 (9th Cir. 1998) (internal quotations omitted).

Plaintiffs argue Defendants violated their right to due process by failing to post notice or have a veterinarian examine their animals prior to seizure in violation of Washington law and by failing to provide notification prior to euthanizing the horse named Melvin. Defendants argue that they complied with

ORDER GRANTING SUMMARY JUDGMENT -- 11

state law and that their actions comported with due process are shielded from liability based on qualified immunity. The Court sides with Defendants, at least on the issue of qualified immunity.

During oral argument, Plaintiffs argued Defendants violated their right to due process because notice must be given in advance of the seizure.[4] Plaintiffs appear to be making an argument under RCW 16.52.085(3) (2020), which, at the time of the seizure, provided as follows:

> Any owner whose domestic animal is removed pursuant to this chapter shall be given written notice of the circumstances of the removal and notice of legal remedies available to the owner. The notice shall be given by posting at the place of seizure, by delivery to a person residing at the place of seizure, or by registered mail if the owner is known. In making the decision to remove an animal pursuant to this chapter, the officer shall make a good faith effort to contact the animal's owner prior to removal.

The undisputed facts in the record show Officer Durbin complied with these requirements. Officer Durbin visited the Altiero property prior to obtaining a warrant to remove the Plaintiffs' animals. And at the time of the seizure, he provided Kelly Altiero with a search warrant return, inventory, receipt, and a disposition letter, explaining available legal remedies. The statute did not require

---

[4] This component of the due process claim was not raised in the briefing. Arguably, it was waived. *See Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) (noting that "the plaintiffs did not raise that argument to the district court in their ... opposition to the defendants' motion for summary judgment, so the argument was waived.").

ORDER GRANTING SUMMARY JUDGMENT -- 12

Officer Durbin to post a copy of the seizure notice in lieu of handing it to Ms. Altiero. But even if Defendants did not strictly follow RCW 16.52.085 (2020), Plaintiffs fail to demonstrate this would constitute a violation of clearly established law so as to avoid qualified immunity. *See Pettit v. City of Orting*, 2013 WL 414231, at *7 (W.D. Wash. Feb. 1, 2013). Defendants are thus entitled to qualified immunity regarding pre-seizure notice.

Plaintiffs' argument regarding the veterinarian examination is based on a misreading of Washington law. Under RCW 16.52.085(2) (2020), a law enforcement officer "may" authorize an examination of a domestic animal by a veterinarian prior to taking custody of the animal. However, an examination is not required. Thus, the fact that a pre-seizure examination did not occur here fails to support a claim of violation of procedure.

Plaintiffs make a stronger argument that Defendants violated Plaintiffs' procedural due process rights by failing to provide notification prior to euthanizing the horse Melvin. At its core, the constitutional requirement of due process requires "some kind of notice and … some kind of hearing." *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). In determining what type of notice and hearing are required, the court considers the three-part test announced in *Mathews v. Elridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

ORDER GRANTING SUMMARY JUDGMENT -- 13

*Mathews v. Elridge*, 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Construing the facts in the light most favorable to the plaintiffs, it is arguable that Defendants violated Ms. Altiero's due process rights by failing to contact her before euthanizing Melvin. While not all the *Mathews* factors are clear, Ms. Altiero had a property interest in her horse and it seemingly would not have been difficult for Defendants to contact Ms. Altiero before approving euthanasia. Defendants were constructively aware that Ms. Altiero sought return of Melvin and the other animals by virtue of the fact that they filed a petition for return of the animals the day before he was put down.

However, Plaintiffs again cannot overcome Defendants' assertion of qualified immunity. Under state law, Defendants were authorized to euthanize a "severely injured, diseased, or suffering animal[ ]" in their custody "at any time." RCW 16.52.085(4) (2020). No exception is made for when there is a pending petition for return of the animal. And the statue does not require any form of notice to the animal's owner. At the time Melvin was euthanized, at least two federal district courts had denied procedural due process claims to owners whose animals were euthanized under state law. *See Bakay v. Yarnes*, 431 F.Supp.2d 1103, 1111 (W.D. Wash. 2006); *Theis v. Yuba Cnty. Sheriff's Dep't*, 2020 WL 5502332, at *3-4 (E.D. Cal. Sept. 11, 2020). Meanwhile, Plaintiffs point to no Ninth Circuit or Supreme Court precedent indicating contact with an animal's owner is required prior to following statutory procedures for euthanasia. Given this context, Defendants are entitled to qualified immunity regarding the decision to euthanize Melvin.

*4. Municipal liability based on negligent hiring or training*

ORDER GRANTING SUMMARY
JUDGMENT -- 14

In addition to claims against Officer Durbin, Plaintiffs also assert claims of municipal liability against Officer Knezovich and Spokane County. A government entity may not be held liable under 42 U.S.C. § 1983 unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611(1978). Defendants argue Plaintiffs have failed to point to any policy, practice or custom that could give rise to municipal liability. The Court agrees.

Plaintiffs' claim of municipal liability is somewhat unclear, but it appears to rest on an allegation that the municipal defendants are liable based on a failure to train theory. Liability under this theory requires proof a municipality was deliberately indifferent to the constitutional rights of its citizens. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "'[D]eliberate indifference' is a stringent standard of fault". *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (citation omitted). Liability requires proof that "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton,* 489 U.S. at 390.

Plaintiffs fail to proffer specific evidence showing Spokane County was on actual or constructive notice of flaws in their training programs that would tend to cause violations of citizens' constitutional rights. Plaintiffs point to a prior lawsuit filed against Defendants Ashley Prozek and SCRAPS. *See Schonbachler v. Spokane County, et. al*., Case No. 20200032-32 (Wash. Super. Mar. 1, 2021). But

ORDER GRANTING SUMMARY JUDGMENT -- 15

that lawsuit was dismissed with prejudice. There was never any finding of misconduct or liability. This fails to suggest an obvious need for training that could support a theory of municipal liability. Defendants are entitled to summary judgment.

5. *Defamation*

Plaintiffs' briefing on summary judgment does not address their defamation claim.[5] At oral argument, Plaintiffs' counsel claimed defamation based on SCRAP's February 12, 2021, Facebook post, stating "The living conditions of the animals were deplorable, and their bodies bear the consequences of prolonged neglect." Defendants argue Plaintiffs cannot establish liability because, as a law enforcement entity, SCRAPS enjoys a qualified privilege from liability. *See Bender v. City of Seattle*, 99 Wn.2d 582, 601, 664 P.2d 492 (1983). The Court agrees with Defendants.

Law enforcement enjoy "a qualified privilege when releasing information to the public or news media concerning official activities." *Hanson v. City of Snohomish*, 65 Wn. App. 441, 447, 828 P.2d 1133 (1992), *rev'd on other grounds*, 121 Wash. 2d 552, 852 P.2d 295. "A person abuses the privilege by making a statement knowing it to be false or with reckless disregard as to its truth." *Id*.

Plaintiffs fail to specify what about the SCRAPS Facebook post constituted a knowingly false statement. At oral argument, counsel claimed the conditions described in the post were overstated. But an overstatement of facts is not proof of

---

[5] Given the lack of briefing, this claim was arguably waived. *See Pac. Dawn LLC*, 831 F.3d at 1178 n.7.

ORDER GRANTING SUMMARY JUDGMENT -- 16

a knowingly false statement. Defendants are entitled to summary judgment on the claim of defamation. *See also Life Designs Ranch, Inc. v. Sommer*, 191 Wn. App. 320, 330, 364 P.3d 129 (2015) (an "alleged defamatory statement must be a statement of fact, not a statement of opinion").

6. Trespass

Plaintiffs contend Officer Durbin committed an unlawful trespass when he visited the Altiero property on February 9, 2021, without a warrant. Like their arguments regarding the warrantless search, Defendants argue Officer Durbin did not trespass onto the Altiero property because his actions were confined to a permissible knock and talk. The Court agrees with Defendants.

To establish a civil claim for intentional trespass under Washington's common law, a plaintiff must show "(1) an invasion of property affecting an interest in exclusive possession; (2) an intentional act; (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest; and (4) actual and substantial damages." *Wallace v. Lewis Cnty.*, 134 Wn. App. 1, 15, 137 P.3d 101 (2006).

There are no facts in the record that could support a trespass claim. It is undisputed Officer Durbin traveled through and open gate and along a driveway to access the Altiero property. Although there was at least one No Trespassing sign posted on the property, "[a] 'No-Trespassing' sign alone does not withdraw permission to enter access routes to a house or other portions of the curtilage impliedly open to the public." *State v. Hornback*, 73 Wn. App. 738, 744 n.4, 871 P.2d 1075 (1994). Plaintiffs assert knock and talks are not permissible in rural areas, but no authority is provided for this claim. There are no specific facts

ORDER GRANTING SUMMARY JUDGMENT -- 17

indicating Officer Durbin lacked authority under the knock and talk exception to approach what appeared to be the front door of the Altiero residence. This is especially true where, as here, Plaintiffs were not just living on the property, but were also operating business-like activities in the form of a ranch and an animal rescue operation. Defendants are entitled to summary judgment on the claim of trespass.

*7. Negligence*

The briefing fails to clarify the nature of Plaintiffs' negligence claim. At oral argument, Plaintiffs' counsel asserted their negligence claim was similar to the defamation claim and based on duties not to misstate facts. As set forth above, the facts in the record do not support a claim Defendants violated a duty not to misstate facts. Accordingly, Defendants are entitled to summary judgment on this claim.

ACCORDINGLY, IT IS ORDERED that Defendants' Motion for Summary Judgment, **ECF No. 51**, is **GRANTED**.  The Clerk of this court shall enter this Order and judgment in favor of Defendants, forward copies to counsel, and close this file.

**DATED** February 12, 2025.



Rebecca L. Pennell
United States District Judge

ORDER GRANTING SUMMARY JUDGMENT -- 18